**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

**SHERRY L. WEISHEIT**
2227 Castleton Road
Darlington, MD 21034

    *Plaintiff,*

  v.

**ROSENBERG & ASSOCIATES, LLC**      Case No. 17-823
4340 East West Highway
Bethesda, MD 20814

Serve: Diane Rosenberg Esq
4340 East West Highway
Bethesda, MD 20814

AND

**BAYVIEW LOAN SERVICING, LLC**
4th Floor
4425 Ponce De Leon BLVD
Coral Gables, FL 33146

Serve: CSC-Lawyers Incorporating Service Company
7 St. Paul Street
Suite 820
Baltimore, MD 21202

    *Defendants.*

## COMPLAINT AND JURY DEMAND

### INTRODUCTION

1.  In these instances, such as the underlying matter involving Bayview Loan Servicing LLC ("Bayview"), the servicers place their interest above that of the homeowner and unfairly and deceptively ignore their statutory and contractual duties including those which were agreed to as part of their license to legally operate in the State of Maryland and nationwide.

2. These practices are compounded when homeowners and consumers for whom the legislature has extended certain remedial rights and protections, like Plaintiff Sherry Weisheit ("Ms. Weisheit" or Plaintiff) tries in good faith to resolve their situation and apply for appropriate loss mitigation but the servicer, i.e. Bayview, and the servicer's authorized agents, i.e. the substitute trustees at Rosenberg & Associates, LLC ("Rosenberg") unfairly and deceptively ignores their rights under federal and state law and improperly dual track loss mitigation efforts with foreclosure activities. After their reasonable efforts to mitigate and resolve their mortgage situations are ignored, homeowners such as Ms. Weisheit are left with no other options but to seek the assistance of the Courts.

3. The subject practices involved in this action related to Ms. Weisheit include the unfair and deceptive practice of Bayview failing to permit homeowners to exercise their mandatory right for loss mitigation options required under federal law by scheduling a foreclosure sale for a period of time expressly prohibited by 12 C.F.R. § 1024.41 pursuant to 12 U.S.C.A. § 2605(k)(1)(E). Rosenberg is also aware of the rights of Ms. Weisheit pursuant to the Real Estate Settlement Procedures Act, 12 U.S.C.A. § 2605 ("RESPA"), and Bayview's promises to her, but acts unfairly and deceptively to schedule and advertise a foreclosure sale before it is permitted to be scheduled pursuant to 12 C.F.R. § 1024.41 pursuant to 12 U.S.C.A. § 2605(k)(1)(E).

4. Had Bayview and the substitute trustees' attorneys at Rosenberg performed the basic services required of mortgage servicers and debt collectors nationwide by not attempting to proceed to foreclosure sale while simultaneously soliciting or reviewing loss mitigation packages this action would not be necessary.

5. In this action, Ms. Weisheit is seeking statutory and actual damages available

under 12 U.S.C.A. § 2605(f)(2) and 12 C.F.R. § 1024.41(a) as authorized by 12 U.S.C.A. § 2605(k)(1)(E). Plaintiff's damages include emotional damages manifested by fear, embarrassment, frustration and anger arising from Bayview's illegal dual tracking of a foreclosure sale, through its substitute trustees at Rosenberg, at a time when it is not permitted to schedule or conduct a foreclosure sale. Plaintiff is also entitled as damages and losses for the attorney fees incurred by them to engage counsel to represent them in the foreclosure proceeding and thereafter present Bayview a timely, complete loss mitigation application in reliance to Bayview's representation and unqualified statement that it would provide her with all the rights available to her (and other borrowers) pursuant to 12 U.S.C.A. § 2605(k)(1)(E) and 12 C.F.R. § 1024.41; Bayview is liable for these fees as actual damages to Ms. Weisheit since Bayview scheduled and advertised a foreclosure sale through its substitute trustees at Rosenberg in a violation of 12 U.S.C.A. § 2605(k)(1)(E) and 12 C.F.R. § 1024.41(a).

6.  Finally, Bayview and its substitute trustees at Rosenberg have simply disregarded the rights of Ms. Weisheit for when a foreclosure sale may be lawfully scheduled pursuant to 12 U.S.C.A. § 2605(k)(1)(E) and 12 C.F.R. § 1024.41. Ms. Weisheit requests that this Court resolve this dispute and declare the rights of the parties concerning when a foreclosure sale may be lawfully scheduled in the State of Maryland.

## JURISDICTION

7.  This Court has jurisdiction pursuant to 28 U.S.C.A. § 1331 since certain of the claims asserted herein arise under the laws of the United States as well as the Supremacy Clause of the United States Constitution, art. VI, cl. 2. Further, the Court may elect to retain supplemental jurisdiction over the state law claims pursuant to 28 U.S.C.A. § 1367 since those claims are so related to the federal claims asserted herein that they form part of the same case

and controversy.

8. The Court has declaratory authority over the controversy pursuant to 28 U.S.C.A. § 2201, Fed. R. Civ. P. 57, and MD. CODE ANN., CTS. & JUD PROC. § 3-409.

9. Venue is appropriate in this Court pursuant to 28 U.S.C.A. § 1391 because a substantial portion part of the events or omissions giving rise to the claims before the Court occurred in this District.

## PARTIES

10. Sherry Weisheit is the owner of the real property subject to this action at 2227 Castleton Road, Darlington, Maryland 21034 (the "Property"). On April 26, 2007, Ms. Weisheit executed a promissory note and deed of trust in the amount of $417,000.00 from Quicken Loans for the property located at 2227 Castleton Road, Darlington, Maryland 21034.

11. Defendant Bayview Loan Servicing, LLC ("Bayview") is a loan servicer that regularly conducts business throughout the United States and in Maryland. Bayview has acted as the mortgage servicer of Ms. Weisheit during all periods relevant to the Complaint. Bayview acts as the mortgage servicer on behalf of The Bank of New York Mellon FKA the Bank of New York, as trustee for the certificate holders of the CWALT Inc., Alternative Loan Trust 2007-18cb, Mortgage pass-through certificates, series 2007-18CB ("CWALT"). Bayview was responsible for the appointment of the substitute trustees as Rosenberg & Associates in this matter and all mater related to the scheduling of foreclosure sales. Bayview allegedly acquired the servicing rights to the Note sometime in 2012 at which time Bayview alleges Ms. Weisheit was in default.

12. Defendant Rosenberg & Associates and its employees/principals Diane S. Rosenberg, Mark D. Meyer, John A. Ansell, II, Kenneth Savitz, and Jennifer Rochino act as debt collectors on behalf of Bayview in this action. Rosenberg acts as authorized agents of Bayview

in all aspects related to the conduct of this action and the scheduling and advertisement of the foreclosure sale on behalf of Bayview. Rosenberg was allegedly appointed Substitute Trustees on March 16, 2016 at which time Rosenberg alleges the loan was in default.

## FACTS

13. On April 26, 2007, Sherry Weisheit executed a promissory note ("Note") and deed of trust ("DOT") in the amount of $417,000.00 from Quicken Loans for the property located at 2227 Castleton Road, Darlington, Maryland 21034.

14. The Note was subsequently securitized and at some point allegedly became held by CWALT.

15. The Note was serviced by Bank of American until around 2012, when Bayview allegedly acquired the servicing rights.

16. On April 26, 2016, Rosenberg commenced a foreclosure action against Ms. Weisheit and the Property in the Circuit Court of Harford County, Maryland. *Rosenberg et al v. Weisheit*, Case No. 12-C-16001195 (Harford Cir. Ct. 2016). Bayview and Rosenberg alleged that Weisheit had defaulted as of November 2, 2009.

17. On or about September 6, 2017, Ms. Weisheit submitted a complete loan modification application. At the time the complete application was submitted, there was no sale date scheduled, and as such, the completed application was received more than 37 days prior to a scheduled sale.

18. On September 9, 2016, the parties held a mediation at the Office of Administrative Hearing, but failed to come to an agreement.

19. On September 15, 2016, the Parties jointly filed a Motion to Enlarge Time to File the

Motion to Dismiss until the loss mitigation process was completed as Defendant's application for a loan modification was still under review.

20. On November 15, 2016, Bayview issued a denial to Weisheit's application for a loan modification incorrectly claiming that it could not create a post modified payment between the range of 10-55% debt to income (DTI) of Weisheit's gross month income. (The November 15, 2016 letter is attached as Exhibit 1, and incorporated by reference.) The letter did not state whether Bayview believed Weisheit was above or below the acceptable range. The letter contained the proposed input values that Bayview had used to determine Ms. Weisheit's eligibility for a HAMP Tier 1 loan modification including performing the calculations with a term of 480 months. The letter did not make any mention as to whether there were any investor guidelines which would prevent the modification. Further, the later stated that "If your written evidence is valid and material to the NPV outcome, we will re-perform the NPV evaluation with the corrected input values. Following the re-evaluation, we will provide you with the updated NPV outcome and input values."

21. On November 29, 2016, Ms. Weisheit timely filed an appeal to Bayview's denial of her application for a loan modification demonstrating that using Bayview's NPV numbers, including a term of 480 months, that she did qualify for a modification as her Principal Interest Taxes and Insurance ("PITI") payment would be between the DTI of 10-55%. (The November 29, 2016 Appeal Letter is attached as Exhibit 2 and incorporated by reference.)

22. In a letter dated December 29, 2016, but posted marked January 5, 2017 and received by Undersigned Counsel's office on January 10, 2017, Bayview sent Ms. Weisheit a response. (The December 29, 2016 letter is attached as Exhibit 3 and incorporated by reference) Bayview, realizing that Plaintiff was correct that based on the provide information she qualified

for the HAMP Tier 1 modification, declined to address its error, and instead, articulated a brand new reason for the denial. The letter then stated that

> In order to achieve the proposed HAMP T1 payment it would have been necessary to extend the term past the Line 21 term of 246 remaining months. The investor has restricted the ability to have the term extended. Therefore, the proposed terms for the HAMP Tier 1 modification of extending to 480 months as indicated within the HAMP Tier 1 waterfall steps could not be met.

23. Despite RESPA requirements to the contrary, Bayview did identify the name of the investor or the particular guideline (e.g. whether the investor had restricted any extension of the term of a loan modification, or if it was limited to an amount less than 480 months). The letter also did not provide any calculations demonstrating that Ms. Weisheit had been evaluated for a loan modification using the term of 286 months, or whether she qualified (she did.) In addition, despite its promise in its earlier letter to provide them, the letter did not include updated NPV outcome and input values.

24. The letter further stated "We have enclosed all supporting documentation used to compete the review on your account." ("Supporting Documentation"). However, the letter did not contain any documents. Furthermore, the letter failed to include Ms. Weisheit's rights to appeal the wrongful denial for the newly stated reason.

25. On January 12, 2017, Weisheit, through counsel's office, called Bayview to inquire about the missing Supporting Documentation. A representative of Bayview stated that the Supporting Documentation would be sent within 72 hours.

26. Also that day, Ms. Weisheit also sent a letter to Bayview identifying its error by failing to provide the Supporting Documentation and stating that she would appeal the new reason for the denial upon receipt of the Supporting Documentation. (The January 12, 2017 letter is attached as Exhibit 4 and incorporated by reference).

27. In addition, Counsel asked the Substitute Trustees to agree to extend the deadline to file her Motion to Stay or Dismiss the Foreclosure Action until loss mitigation had been completed and Ms. Weisheit had received the Supporting Documentation.

28. On January 24, 2017, Weisheit through counsel, again requested that the deadline be extended until the Supporting Documentation had been received, or a she would be forced to filed a claim for violations of RESPA for dual tracking.

29. Later that day, Mark Meyer, Substitute Trustee and attorney for Bayview, wrote "We will agree to extend the time to file a 14-211 motion. Further, with regard to a claim for proceeding while loss mitigation is pending, there has been no further action by our office to proceed in the case since mediation." (The January 24, 2017 Email is attached as Exhibit 5 and incorporated by reference).

30. On or around February 12, 2017, prior to receiving any further communication from Bayview or Rosenberg regarding the Supporting Documentation, or receipt of the Supporting Documentation itself, Ms. Weisheit received "Notice of Sale" stating that her home would be sold on March 9, 2017. (The Notice of Sale is attached as Exhibit 6 and incorporated by reference). Enclosed with the Notice of Sale was the advertisement of the sale of the home. This notice was in violation of Ms. Weisheit's rights under RESPA because loss mitigation activities were still ongoing.

31. On or around February 22, 2017, Weisheit's counsel received a letter from Bayview dated February 15, 2017, stating that there was no Supporting Documentation and that the language was "standard verbiage for the response letter when attachments are noted and should have been omitted for no attachments." (The Letter Dated February 15, 2017 is attached as Exhibit 7 and incorporated by reference). Enclosed with the letter was another copy of the December 29,

2017 letter this time without the language stating "We have enclosed all supporting documentation used to compete the review on your account."

32. On February 28, 2017, Ms. Weisheit sent a letter responding to Bayview's incorrect denial and stating Bayview's error of engaging in dual tracking in violation of her rights under RESPA. (The February 28, 2017 letter is attached as Exhibit 8 and incorporated by reference).

33. In the letter, which was sent by email and mailed 7 days prior to the scheduled sale date, Weisheit stated that Bayview had violated 12 C.F.R. §1024, by failing to provide the name of the investor and to specifically state the investor requirement which prevents her from qualifying for a modification. In addition, Bayview had erred in determining that Weisheit did not qualify for a loan modification because using Bayview's inputs, her PITI payment at 246 months would be inside the acceptable DTI range of 10-55%, and therefore, she qualifies for a loan modification.

34. Bayview has not responded to Ms. Weisheit's appeal of her loan modification application, or responded to the errors identified.

35. Despite repeated requests, Bayview and Rosenberg would not agree to cancel the March 9, 2017 sale even though loss mitigation was still ongoing.

36. Because of Bayview and Rosenberg's actions, Ms. Weisheit has incurred additional legal fees to file an Emergency Motion to Stay and/or Dismiss the Foreclosure Action Pursuant Maryland Rule 14-211, and drafting letters and emails to attempt to get defendants to agree to cancel the sale.

37. On March 8, 2017, the Circuit Court for Harford County granted Weisheit's Emergency Motion stating in part that the sale of the home was stayed "until loss mitigation has been completed."

38. Upon information and belief Bayview and Rosenberg have assessed charges and fees to Ms. Weisheit's mortgage account for the costs wrongfully incurred related to the scheduling and advertisement of the purported March 9, 2017 foreclosure sale.

39. In furtherance of pursuing the illegal foreclosure sale, Rosenberg has published an advertisement in the Aegis on February 17, 2017 (and also scheduled for the advertisement to reappear on February 24, 2017 and March 3, 2017) and stated that it has scheduled the sale pursuant to the Ms. Weisheit's Deed of Trust recorded in the land records of Harford County, Maryland.

40. Rosenberg failed to disclose in the advertisement or to the Ms. Weisheit that it did not have the right to pursue the foreclosure sale pursuant to ¶¶ 22 of the aforementioned Deed of Trust because the right to evoke and utilize the power of sale remedy in the Deed of Trust is conditioned upon the "Applicable Law" governing the parties' relationship related to the Deed of Trust. "Applicable Law" is defined in the Deed of Trust at ¶ J to include "all controlling applicable federal, state, and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions."  "Applicable Law" therefore under the Deed of Trust includes RESPA and 12 C.F.R. §1024.41.

41. There was no just or equitable reason for Bayview, acting directly and indirectly through its agents including the Rosenberg, to schedule and advertise the foreclosure sale while it was Ms. Weisheit's appeal of the denial of her application for loan modification was ongoing.

42. As a direct and proximate result of the acts and omissions of Bayview and Rosenberg described *supra*, Ms. Weisheit is entitled to statutory damages available under the claims asserted herein. In addition, Ms. Weisheit is entitled to other economic and non-

economic damages, directly related to and proximate to the illegal acts and omissions of the Defendants, including: (i) attorney fees and costs assessed to Ms. Weisheit's mortgage account for the illegal scheduling of foreclosure sale which Bayview and Rosenberg had no right to conduct under RESPA while evaluation of their complete loss mitigation application was ongoing and (ii) the emotional damages manifested from the embarrassment, humiliation, and fear that Bayview is going to disregard her rights and simply proceed to foreclosure sale through Rosenberg. These damages and losses would have been avoided all together if Bayview and Rosenberg had not ignored Ms. Weisheit's right to exhaust loss mitigation options before scheduling any foreclosure sale. In addition, Bayview and Rosenberg failed to cancel the sale even though it received a notice of alleged dual tracking more than 7 days prior to the alleged sale.

**COUNT I – VIOLATIONS OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT, 12 U.S.C. § 2605, *ET SEQ*. –PLAINTIFF AGAINST BAYVIEW ONLY**

43. Plaintiff incorporate all preceding paragraphs as if set forth fully herein.

44. Plaintiff is a "borrower" entitled to the protections codified at 12 U.S.C.A. § 2605 and 12 C.F.R. § 1024.41. The mortgage loan subject to this action is a federally related mortgage as defined in 12 C.F.R.1024.2 and involves a consumer transaction at the time the loan was taken out by the Plaintiff.

45. Bayview is a mortgage servicer subject to the mandatory requirements of 12 U.S.C.A. § 2605 and 12 C.F.R. § 1024.41.

46. Among other practices, RESPA and its implementing regulations prohibit a mortgage servicer, such as Defendant Bayview, and its agent acting on its behalf, such as Rosenberg, from simultaneously moving toward foreclosure sale of a homeowner's property and reviewing a homeowner's application for loss mitigation, including applications submitted

through Maryland's foreclosure mediation process, a process known as "dual-tracking."

47. Pursuant to the regulations, any borrower more than 37 days from a foreclosure sale on January 10, 2014, who submits a complete loss mitigation application is entitled to an evaluation of the complete loss mitigation application for all available loss mitigation options under 12 C.F. R. § 1024.41.

48. In addition, once Ms. Weisheit submitted a complete loss mitigation application, Bayview and Rosenberg were prohibited from scheduling or conducting a foreclosure sale until Ms. Weisheit had exhausted her loss mitigation appeal rights:

> If a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale, unless:
>
> (1) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied;
> (2) The borrower rejects all loss mitigation options offered by the servicer; or
> (3) The borrower fails to perform under an agreement on a loss mitigation option.
>
> 12 C.F.R. §1024.41(g).

49. In addition, if the borrower is denied for a loan modification, as in the instant case, the servicer has to notify the borrower of any rights to appeal the decision, the requirements for appeal, and the time the borrower has to appeal. 12 C.F.R. § 1024.41(d); 12 C.F.R. § 1024.41(c)(1)(ii). If the borrower timely appeals, Bayview must respond within 30 days (which it did not) and is precluded from moving forward with a foreclosure sale until the borrower receives a final determination.

50. Here, Plaintiff submitted a completed loan modification application 37 days prior to any scheduled sale.

51. Bayview erroneously denied Plaintiff's initial application for two separate reasons on two separate dates.

52. On November 15, 2016, Bayview incorrectly stated that Plaintiff did not qualify for a HAMP modification because her monthly modified housing expense was not between 10% and 55% of her gross monthly income based on the NPV inputs used by Bayview.

53. Plaintiff timely appealed this determination and Bayview ultimately agreed that based on the NPV used by Bayview in its November 15, 2016 denial, including the term of 480 months, Plaintiff qualified for a HAMP modification.

54. On or around January 10, 2017, Bayview incorrectly stated that Plaintiff did not qualify for a HAMP modification because the investor had restricted the ability to extend the term for 480 months, and Plaintiff would not qualify for HAMP without the extension.

55. Plaintiff has again timely appealed this determination, and again demonstrated that she qualifies for HAMP Tier 1 modification using 286 months as the term of the loan.

56. If a servicer fails to comply with 12 C.F.R. §1024.41(b)(2)(i), "a borrower may enforce the provisions of this section pursuant to section 6(f) of RESPA." 12 C.F.R. §1024.41(a). Section 6(f) of RESPA is codified at 12 U.S.C. 2605(f). The Maryland legislature has also preserved the rights of homeowners to purse actions such as this. MD. CODE ANN., REAL PROP. § 7-105.1(m)(3)("Nothing in this subtitle precludes the mortgagor or grantor from pursuing any other remedy or legal defense available to the mortgagor or grantor").

57. Bayview, directly and indirectly through its agents including Rosenberg, has proceeded with foreclosure actions by scheduling and/or advertising a foreclosure sale of the

Plaintiff's home at a time not permitted by 12 C.F.R. § 1024.41 and refusing to cancel the sale since she had submitted a completed loan modification packet more than 37 days prior to a sale, her right to appeal the denial was not exhausted, and it did not cancel the sale even though it received notice of alleged dual tracking more than 7 days before the scheduled sale.

58.     By scheduling a sale for March 9, 2017 for the Plaintiff's Property and home without having complied with the RESPA requirements discussed herein, Bayview violated the provisions of Md. Code Ann., Real Prop. § 7-105.1 and 12 C.F.R. 1024.41 and the prohibition on dual-tracking.

59.     Plaintiff is entitled to statutory damages for Bayview's violations of 12 C.F.R. § 1024.41 by proceeding with the scheduling of foreclosure sale before evaluating loss mitigation applications in the time period disclosed to them and prior to any scheduling of a foreclosure sale. In addition, the Plaintiff is entitled to their actual damages described herein related to the foreclosure sales scheduled in violation of RESPA.

60.     WHEREFORE, pursuant to 12 U.S.C.A. Plaintiff respectfully request that the Court (i) enter judgment in favor of Plaintiff against Bayview for its violations of 12 U.S.C.A. § 2605 and 12 C.F.R. § 1024.41 by proceeding or attempting to proceed with foreclosure sales while the loss mitigation applications of the Plaintiff were submitted within the time disclosed in Bayview's solicitations of loss mitigation options prior to the public scheduling of any foreclosure sale, (ii) award actual damages and losses sustained by the Plaintiff as a direct and proximate result of the acts and omissions described herein as determined by the trier of fact (iii) award Plaintiff costs, and (iv) award attorney's fees and (v) grant Plaintiff other and further relief as the Court finds necessary and proper.

## COUNT II

**VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT 15 U.S.C. § 1692, *ET SEQ.* –
PLAINTIFF AGAINST ALL DEFENDANTS**

61.     Plaintiff incorporate all preceding paragraphs as if set forth fully herein.

62.     Bayview regularly collects or attempts to collect consumer debts due or asserted to be due to another. Specifically, it is regularly assigned the collection rights of consumer debts, including the consumer debt of the Plaintiff subject to this action assigned to it by CWALT, to when it believes the debt is in default, and therefore is a Debt Collector within the meaning of 15 U.S.C. § 1692a(6). Bayview believed that Plaintiff's loan was in default when the loan was assigned to it for collection on or about 2012 by the loan's secured party.

63.     Rosenberg regularly collects or attempts to collect consumer debts due or asserted to be due to another. Specifically, it is regularly assigned the collection rights of consumer debts, including the consumer debt of the Plaintiffs subject to this action assigned to it by Bayview, to when it believes the debt is in default, and therefore is a Debt Collector within the meaning of 15 U.S.C. § 1692a(6). Rosenberg believed that Plaintiff's loan was in default when the loan was assigned to it for collection on or about March 16, 2016 by Bayview as the authorized servicer and attorney-if-fact for the loan's secured party.

64.     By scheduling and advertising foreclosure sales of the Plaintiffs' property, as described herein, when those sales cannot be held in violation of (i) 12 U.S.C.A. § 2605 and 12 C.F.R. § 1024.41, and/or (ii) the terms of the deed of trust, Rosenberg and Bayview have materially violated 15 U.S.C. § 1692e.

65.     Defendant's actions described herein also constitute materially unfair or deceptive practices in violation of 15 U.S.C. § 1692f. This conclusion is based upon the fact that no reasonable person would believe it would be fair to proceed and advertise foreclosure sales

before them may even lawfully occur under state or federal law.

66.     As a result of Defendant's materially improper debt collection practices, which directly and indirectly violate Plaintiffs' rights under 12 U.S.C.A. § 2605 and 12 C.F.R. § 1024.41, Plaintiff has suffered actual economic and non-economic damages, as more fully described *supra* and has incurred attorney's fees and court costs, and suffered severe emotional distress.

67.     The FDCPA provides for statutory damages in addition to actual damages. Ms. Weisheit is entitled to statutory damages as well.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendant pursuant to the FDCPA for (i) actual damages, (ii) statutory damages in the amount of $2,000.00, (iii) costs and attorneys' fees incurred by Plaintiff; and (iv) grant such other and further relief as the Court finds necessary and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Respectfully Submitted,

Date:    March 27, 2017

/s/ F. Peter Silva II
F. Peter Silva II, Esq.
Attorney Code: 19464
Gowen Rhoades Winograd & Silva PLLC
513 Capitol Ct NE STE 100
Washington, DC 20002
Tel: 202-380-9355
Fax: 202-499-1370
Psilva@gowenrhoades.com
*Attorney for Plaintiff*