IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| SHERRY L. WEISHEIT, | * | |
| Plaintiff | * | |
| v. | * | CIVIL NO. JKB-17-0823 |
| ROSENBERG & ASSOCIATES, LLC, *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM**

Plaintiff Sherry L. Weisheit brings this action against Defendants Rosenberg & Associates, LLC ("Rosenberg") and Bayview Loan Servicing, LLC ("Bayview") alleging violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*, and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, in connection with Defendants' servicing of Plaintiff's mortgage and their scheduling of a foreclosure sale in March 2017. Plaintiff filed this action on March 27, 2017 (Compl., ECF No. 1) and then amended her complaint on August 11, 2017. Defendants responded with motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). (*See* Bayview Mot. Dismiss, ECF No. 21; Rosenberg Mot. Dismiss, ECF No. 22.) Plaintiff has responded (ECF No. 25), Bayview has replied (ECF No. 28) and the issues have been fully briefed. No hearing is necessary to resolve the matter. *See* Local Rule 105.6 (D. Md. 2016). Plaintiff has stated a claim against Bayview for violations of RESPA and against both Defendants for violations of the FDCPA. Accordingly, Defendants' motions will be denied by accompanying order.

## I. Facts[1]

Plaintiff Sherry Weisheit executed a mortgage in 2007, went into default in 2009, and Bayview took over servicing the loan in 2012. (*Id.* ¶¶ 13-15.) On April 26, 2016, Rosenberg, working as a debt collector for Bayview, began foreclosure proceedings against Plaintiff. (*Id.*) Almost five months later, but more than thirty-seven days prior to any scheduled foreclosure sale, Plaintiff submitted a "complete loan modification application" to Bayview, applying for a loan modification under the Home Affordable Mortgage Program ("HAMP"). (*Id.* ¶ 17); *see Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 556-57 (7th Cir. 2012) (explaining HAMP). Under RESPA and its implementing regulations if a borrower submits a complete loss mitigation application[2] more than thirty-seven days prior to a scheduled foreclosure sale, the loan servicer must evaluate that application before proceeding with foreclosure. 12 C.F.R. § 1024.41(g). To proceed with foreclosure while loss mitigation is pending is to engage in a prohibited practice known as "dual-tracking." (Am. Compl. ¶ 46.) After a failed attempt at mediation, Bayview denied Plaintiff's application by letter on November 15. (*Id.* ¶ 20; Denial Letter, Compl. Ex. 1, ECF No. 1-1.)

In Bayview's denial letter ("Denial Letter"), Bayview explained that it denied Plaintiff's request for a HAMP Modification because the modified monthly payment that would result from such a modification was outside the "required range of 10-55% of [Plaintiff's] monthly gross income." (Denial Letter at 1, ECF No. 1-1 at 2.) In the vernacular of mortgage regulations, Bayview believed that Plaintiff could not meet the qualification of 10-55% DTI ("debt to income

---

[1] As this memorandum is evaluating a motion to dismiss, the facts are recited here as alleged by Plaintiff, *see Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997), including those facts set forth in exhibits attached to Plaintiff's original complaint, *see Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., Md.*, 684 F.3d 462, 467 (4th Cir. 2012); Local Rule 103.6(b) (2016).
[2] Plaintiff appears to use the terms "loss mitigation application" and "loan modification application" interchangeably. In substance these terms are virtually identical. The Court will use the term "loss mitigation application" as that is the term used in the federal regulations. *See* 12 C.F.R. § 1024.41.

2

ratio") for a HAMP Tier 1 loan modification. (*See* Am. Compl. ¶ 20.) Essentially, the Denial Letter stated that Plaintiff's loss mitigation application was denied because the monthly payment that Plaintiff would have to make if the loan was paid off over 480 months would be outside (either above or below) 10-55% of Plaintiff's gross income. (*See* Denial Letter at 5, ECF No. 1-1 at 8 (listing the amortization term as 480 months).)

Under RESPA and its regulations, a borrower is entitled to appeal the denial of her loss mitigation application, *see* 12 C.F.R. § 1024.41(h), and Plaintiff availed herself of this opportunity, (Am. Compl. ¶ 21). Plaintiff's appeal ("Appeal Letter"), on November 29, 2016, notified Bayview that Plaintiff's monthly debt payment in fact would be within 10-55% of her income. (*Id.*; Appeal Letter, Compl. Ex. 2, ECF No. 1-2.) In other words, Bayview had done the math wrong. Bayview sent Plaintiff a response ("Response Letter") dated December 29, 2016. (Response Letter, Compl. Ex. 3, ECF No. 1-3.)

The substance of Bayview's response is highly important to the outcome of this motion. Bayview did not dispute the accuracy of Plaintiff's calculations, but instead of reversing course and approving Plaintiff's loss mitigation application, Bayview asserted that it was bound by an "investor restriction" that prevented it from extending the term of the loan (*Id.* at 2-3, ECF No. 1-3 at 3-4.). The Response Letter did not name the investor nor did it describe the nature of the investor restriction, other than to say that it prevented extension of the loan term. Towards the end of Bayview's Response Letter it stated that "[w]e have enclosed all supporting documentation used to complete the review on your account." (Response Letter at 3, ECF No. 1-3 at 4.) The letter, however, did not contain any such documents. (Am. Compl. ¶ 24.) Plaintiff responded to Bayview stating that she would be appealing this denial once she had received the supporting documentation. (January 12 Letter to Bayview, Compl. Ex. 4, ECF No. 1-4.) She

3

also let Rosenberg know that she was still in the process of appealing and that Rosenberg should therefore not restart the foreclosure process – a request with which Rosenberg appeared to agree. (*See* Rosenberg Emails, Compl. Ex. 5, ECF No. 1-5.)

Despite Rosenberg's apparent agreement, the next communication Plaintiff received from Rosenberg was a letter on February 9, 2017 informing her that her home would be sold one month later, on March 9. (Am. Compl. ¶ 30.) This notice informed Plaintiff not only that her home was to be sold but that the sale had been advertised in a local newspaper. (Notice of Sale, Compl. Ex. 6, ECF No. 1-6.) It was not until February 22 that Plaintiff received her next communication from Bayview: a letter dated February 15 that did not address the foreclosure at all, but did explain that the "supporting documentation" language had been in error and there was no such documentation forthcoming. (February 15 Letter, Compl. Ex. 7, ECF No. 1-7.)

Plaintiff responded to this letter and the notice of foreclosure by mailing a letter to Bayview on February 28. (*See* February 28 Letter, Compl. Ex. 8, ECF No. 1-8.) Plaintiff set forth her appeal of Bayview's decision in its Response Letter, explaining that *even if* there were "investor restrictions" preventing Bayview from extending the loan term, Plaintiff would still meet the DTI requirements. (*Id.* at 2, ECF No. 1-8 at 3.) In addition to appealing the denial of her loss mitigation application, Plaintiff also set forth the rules and regulations of RESPA and explained that "[b]y scheduling a foreclosure sale of Ms. Weisheit's home for March 9, 2017, Bayview is engaging in dual tracking" because Plaintiff was "still engaged in loss mitigation with Bayview." (*Id.* at 3, ECF No. 1-8 at 4.)

Bayview did not respond. (Am. Compl. ¶ 34.) Neither Rosenberg nor Bayview agreed to cancel the foreclosure sale even after multiple requests from Plaintiff, forcing Plaintiff to file an Emergency Motion to stay the sale, which was granted on March 8, 2017. (*Id.* ¶¶ 35, 37.)

The state court stated that the sale of the home was stayed "until loss mitigation has been completed," strongly suggesting that the state court, at least, believed that loss mitigation was ongoing as of March 8, 2017. (*Id.* ¶ 37.)

Throughout this process, Plaintiff has been required to expend attorneys' fees to prevent Bayview and Rosenberg from proceeding with the foreclosure, has seen attorneys' fees and costs assessed to her mortgage account, and has suffered emotional distress. (Am. Compl. ¶ 42.) Not long after succeeding in having the state court stay the foreclosure sale, Plaintiff brought this action against Bayview and Rosenberg, alleging violations of RESPA, as well as the FDCPA. Defendants have moved to dismiss Plaintiff's complaint under Rule 12(b)(6). (*See* ECF Nos. 21, 22.)

## II.    *Standard for Dismissal for Failure to State a Claim*

A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. An inference of a mere possibility of misconduct is not sufficient to support a plausible claim. *Id.* at 679. As the *Twombly* opinion stated, "Factual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

### III. *Analysis*

Only Bayview is considered a "servicer" under RESPA, *see* 12 C.F.R. § 1024.2, and therefore Plaintiff has brought her RESPA claims against Bayview only. Both Bayview and Rosenberg are "debt collectors" as that term is defined under the FDCPA, 15 U.S.C. § 1692a(6), and therefore Plaintiff has brought her FDCPA claims against both Defendants. The Court will begin its analysis by discussing RESPA and the claims against Bayview before proceeding to the FDCPA claims against both Defendants.

#### a. RESPA

RESPA is a consumer protection statute, designed to protect mortgagors from "certain abusive practices in the real estate mortgage industry." *Nash v. PNC Bank, N.A.*, Civ. No. 16-2910, 2017 WL 1424317, at *3 (D. Md. April 20, 2017) (internal quotation marks omitted). It is implemented by Consumer Financial Protection Bureau ("CFPB") regulations, collectively known as "Regulation X." *See* 12 C.F.R. §§ 1024.1 *et seq*. RESPA has been read remedially in favor of greater coverage to further its goals of providing more information for consumers and preventing abusive practices by servicers. *See Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 665-66 (9th Cir. 2012); *McLean v. GMAC Mortg. Corp.*, 398 F. App'x 467, 471 (11th Cir. 2010); *In re Carter*, 553 F.3d 979, 985, 985 n.5 (6th Cir. 2009); *Alston v. Countrywide Financial Corp.*, 585 F.3d 753, 764 (3d Cir. 2009).

Plaintiff brings two claims against Bayview for violations of RESPA. Count one of Plaintiff's amended complaint alleges that Bayview violated RESPA by engaging in dual-tracking. (Am. Compl ¶ 46.) Count three alleges that Bayview violated RESPA's notice of error provisions, *see* 12 C.F.R. § 1024.35, when it did not respond to Plaintiff's February 28, 2017 letter. Bayview asserts that Plaintiff has failed to state a claim for either the dual-tracking or

6

notice of error provisions of RESPA, and that Plaintiff has failed to plead damages related to the alleged RESPA violations. The Court will discuss each issue in turn.

*i. Dual-tracking*

Dual-tracking is the practice of moving towards foreclosure while the loss mitigation process is ongoing, and it is prohibited under RESPA. *See* 12 C.F.R. § 1024.41(g). The loss mitigation process begins when a borrower submits a complete loss mitigation application, and ends when the servicer denies that application on appeal (or after the servicer's first denial, if the borrower fails to appeal). *See id.* § 1024.41(g). A denial of a loan modification application must state the "specific reason or reasons for the servicer's determination." *Id.* According to the CFPB's official interpretation of this regulation, if the denial is due to a restriction by the investor – that is, if the modification cannot be made by the servicer because the owner of the mortgage would not allow some condition necessary for the modification – then the explanation for the denial "must identify the owner or assignee of the mortgage loan and the requirement that is the basis of the denial." *Id.* Pt. 1024, Supp. 1.[3] Simply stating that the denial is "based on an investor requirement, without additional information specifically identifying the relevant investor or guarantor and the specific applicable requirement, is insufficient." *Id.*

A denial ostensibly based on an investor restriction that does not name the investor or explain the restriction has been held to be insufficient. *See Nash*, 2017 WL 1424317. Much like the case before the Court, in *Nash* a borrower submitted a loss mitigation application to a mortgage servicer seeking a HAMP modification. *Id.* at *1. The servicer denied the modification and in its denial letter stated that the "investor or group of investors ha[d] not given

---

[3] "Although the CFPB's commentary is not binding authority, courts have found its official interpretations to be highly persuasive when they fill a gap in the text of Section 1024.41 and squarely address the factual situation described in the Complaint." *Nash*, 2017 WL 1424317 *4 (internal quotations marks and alterations omitted) (citing cases).

7

[it] the contractual authority to modify [the] loan." *Id.* The borrower appealed to the servicer, arguing that the servicer should have included the details of the investor restriction, but the servicer affirmed its decision. *Id.* The borrower then sued the servicer, alleging that the servicer violated RESPA, specifically 12 C.F.R. § 1024.41(d) which provides the requirements for a denial of a loss mitigation application. *See id*. Relying on the language of the regulation and CFPB's interpretation, the court held that "the denial of a loan modification option based on an investor requirement is 'insufficient' if it does not provide 'the specific applicable requirement' that was not met." *Id.* at *4 (quoting *In re Wiggins*, No. 12-26993 (JKS), 2016 WL 7115864, at *5 (Bankr. D.N.J. Dec. 6, 2016)).

Bayview's denial was ostensibly based on an investor restriction, but it did not name the investor or explain the restriction, and it was therefore insufficient. According to Bayview, the reason for denying Plaintiff's loss mitigation application was that her DTI, calculated according to a restriction by an owner or assignee of the loan, was outside the necessary range of 10-55%. Bayview's November 15 Denial Letter provided less information for the consumer than the insufficient denial letter in *Nash*, because it did not even mention that there was an investor restriction. Bayview's December 29 letter is closer to the denial letter in *Nash* in that it at least explains that there was an investor restriction. But, also like the denial in *Nash*, the December 29 letter did not name the investor or explain the restriction. If, as Plaintiff alleges, this was the sum and substance of Bayview's "denial" of Plaintiff's loss mitigation application, that denial was not sufficient under Regulation X.

If Bayview's December 29 letter was an insufficient denial, then the loss mitigation process did not end on December 29. The provision of Regulation X that prohibits dual-tracking states that once a complete loss mitigation application is submitted by the borrower more than

thirty-seven days before a foreclosure sale, the "servicer shall not . . . conduct a foreclosure sale, unless" the borrower has been notified that they are not eligible for loss mitigation and has failed to appeal, "*or the borrower's appeal has been denied.*" 12 C.F.R. 1024.41(g)(1) (emphasis added). A denial that purports to rest on an investor restriction but does not provide the name of the investor or the substance of the restriction, is not a sufficient denial for purposes of Section 1024.41(d) *and* for purposes of Section 1024.41(g). That is why, assuming the veracity of Plaintiff's complaint and making all inferences in her favor, the Court agrees with the conclusion of the state court: as of March 8, 2017 loss mitigation had not been completed. Scheduling a foreclosure sale when loss mitigation is not complete constitutes dual-tracking, and therefore Plaintiff has stated a claim of dual-tracking in violation of RESPA.

### ii. *Notice of Error*

RESPA contains a provision obligating loan servicers to respond to borrower inquiries. *See* 12 U.S.C. § 2605(e). If a borrower sends a servicer a notice that meets the requirements of a "Qualified Written Request" ("QWR"), the servicer must respond. *See* 12 C.F.R. § 1024.35(e). There are three pertinent requirements. First, the notice must "include[], or otherwise enable[] the servicer to identify, the name and account of the borrower [as well as a] statement of the reasons" for why the borrower believes the servicer is in error and/or what information the borrower is seeking. *Id.* Second, because this is separate from the loss mitigation application process, the error(s) asserted in the notice must be related to the servicing of the loan, and cannot only be about the denial of a loss mitigation application. *See Nash*, 2017 WL 1424317, at \*5. Third, a servicer does not have to respond to a duplicative notice of error, i.e. one that simply restates information the borrower has already provided to the servicer. 12 C.F.R. § 1024.35(g)(1)(i).

Plaintiff has alleged sufficient facts from which a factfinder could conclude that her letter to Bayview on February 28 was a QWR, and therefore that Bayview's failure to respond was a violation of RESPA. First, the letter included the name of the account and the borrower, and provided a detailed explanation of the errors that Plaintiff believed Bayview had made. Second, the February 28 letter stated that a foreclosure sale had been scheduled for March 9, 2017 and that Plaintiff believed this sale was in violation of RESPA's dual-tracking prohibition. The February 28 letter may have largely been an appeal of Bayview's reasons for denial set forth in its December 29 letter, and if the February 28 letter had *only* been an appeal, it would likely not have been a QWR. But this letter did more than appeal a loss mitigation application denial – it asserted an error related to the servicing of Plaintiff's loan, i.e. the improper scheduling of a foreclosure sale. Third, because the February 28 letter included notice of this error, and was not entirely another appeal of Bayview's denial, this notice was not "duplicative." This was the first time Plaintiff had notified Bayview that she believed Bayview had improperly scheduled a foreclosure sale. Both in form and, at least partially, in substance Plaintiff's February 28 letter plausibly falls within the requirements of a QWR under Regulation X.

### iii. *Failure to plead damages*

As a final attempt to dismiss Plaintiff's RESPA claims, Bayview correctly asserts that in order to survive a motion to dismiss, Plaintiff must allege actual damages attributable to the alleged RESPA violations. *See* 12 U.S.C. § 2605(f)(1); (Bayview Mot. Dismiss Mem. Supp. 15 (citing *Minson v. CitiMortgage, Inc.*, Civ. No. 12-2233, 2013 WL 2383658, at *5 (D. Md. May 29, 2013).) Bayview, however, incorrectly asserts that Plaintiff has not done so.

Plaintiff alleged that she has paid and been charged for Attorneys' fees and costs associated with the scheduling of the foreclosure sale, both those assessed to her mortgage

account and whatever she has had to pay in order to get a stay in state court; all of which fees and costs she would not have had to pay if Bayview had not violated RESPA and proceeded with foreclosure. She is not seeking damages simply to punish Bayview for its alleged failure to follow the letter of the law in regard to RESPA. Plaintiff is seeking to be compensated for the fees she has allegedly had to expend in state court fighting to prevent a foreclosure that, according to her, would have never occurred if Bayview had followed the letter of the law. These are actual damages, and Plaintiff has properly alleged them in her complaint.[4]

## IV.  *FDCPA*

Congress enacted the FDCPA after being confronted with "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices." 15 U.S.C. § 1692(a). Both Bayview and Rosenberg are "debt collectors" as defined under the FDCPA, 15 U.S.C. § 1692a(6), a fact that neither party has contested, and Plaintiff alleged that both Defendants violated two provisions of the FDCPA, Section 1692e and Section 1692f.

Sections 1692e and 1692f prohibit debt collectors from using any "false . . . representations" or "unfair . . . means" to collect a debt. 15 U.S.C. § 1629e (false representations); *id.* § 1692f (unfair means). Both sections are broad, covering any false representations or unfair means, but both sections also contain non-exhaustive lists of conduct that Congress explicitly considered false or unfair. Section 1692f's list of unfair practices includes "threatening to take any nonjudicial action to effect dispossession . . . of property if" the

---

[4] Plaintiff has also alleged that she suffered "emotional damages manifested from the embarrassment, humiliation, and fear that Bayview is going to disregard her rights and simply proceed to foreclosure sale through Rosenberg," (Am. Compl. ¶ 42), and Bayview contends that such damages are not recoverable for this type of RESPA violation. As the Plaintiff has at least alleged some pecuniary damage resulting from Bayview's alleged RESPA violations, the Court need not address whether or not the emotional distress damages that Plaintiff has alleged are recoverable.

11

debt collector has no right to take possession of the property or "the property is exempt by law from such dispossession." 15 U.S.C. § 1692f(6).

Plaintiff asserts that Defendants scheduled a foreclosure sale and notified Plaintiff of that sale when they could not legally conduct such a sale under RESPA, thus making a false representation under Section 1692e and using unfair means to collect a debt under Section 1692f. (Am. Compl. ¶¶ 64-65.) Bayview makes three arguments in support of its motion to dismiss Plaintiff's FDCPA claims:[5] 1) it has made no misrepresentation to Plaintiff 2) it has made no material representation to Plaintiff, whether false, deceptive or otherwise and 3) at the very least Plaintiff's Section 1692f claim fails because that provision only applies to conduct that falls outside the scope of the FDCPA's other provisions. Plaintiff makes a plausible case that Bayview is wrong on all three.

According to Bayview, the February notice of a foreclosure sale was not a "misrepresentation" because the December 29 letter was the end of loss mitigation and it was free to proceed with foreclosure in February. The Court has held, however, that Plaintiff has plead facts which, if proven, demonstrate that the December 29 letter was *not* the end of the loss mitigation application process, and that Bayview could not proceed with foreclosure. A notice of foreclosure sale when no foreclosure sale can be conducted could be considered "false." *See* 15 U.S.C. § 1692e.

Bayview's second argument is that even if the notice of the foreclosure sale was a misrepresentation, it was not "material." The Fourth Circuit has held that in order to be actionable, a violation of either Section 1692e or 1692f must be material. *See Stewart v. Bierman*, 859 F. Supp. 2d 754, 762-64 (D. Md. 2012) (citing *Warren v. Sessoms & Rogers*, 676 F.3d 365 (4th Cir. 2012)). In determining materiality, the Court is guided by the standard

---

[5] Arguments which Rosenberg joins. (*See* Rosenberg Mot. Dismiss Mem. Supp. at 3.)

employed in the Fourth Circuit under which a representation is "material" if it would affect a least sophisticated consumer's decisionmaking with regard to her debt. *See Goodrow v. Friedman & MacFadyen, P.A.*, Civil Action No. 3:11cv20, 2013 WL 3894842, at *6 (E.D. Va. July 26, 2013). By this and any reasonable definition, a representation that a debt collector is going to sell a person's home is a "material" representation, as it would likely affect a person's decisionmaking with regard to her debt.[6]

Finally, Bayview contends that Plaintiff cannot avail herself of both Sections 1692e and 1692f. Section 1692f is a catch-all that can only serve as the basis for liability when a debt collector has not violated any other provision of the FDCPA, *unless* a plaintiff alleges that a debt collector engaged in conduct explicitly prohibited in Section 1692f's list. *See Winberry v. United Collection Bureau, Inc.*, 697 F. Supp. 2d 1279, 1292 (M.D. Ala. 2010) (noting that there is a "growing consensus, at least among district courts, that a claim under § 1692f must be based on conduct *either within the listed provisions*, or be based on conduct which falls outside of those provisions, but which does not violate another provision of the FDCPA." (emphasis added)). The Plaintiff here alleged that Defendants engaged in conduct that could be construed as falling under the listed provisions. *See, e.g.*, 15 U.S.C. § 1692f(6). Therefore, Plaintiff has sufficiently alleged facts that support a claim for a violation of both Sections 1692e and 1692f.

V.   *Conclusion*

Plaintiff has alleged sufficient facts to state claim for relief against Bayview for violations of RESPA's dual-tracking provision, 12. C.F.R. § 1024.41(g), and notice of error

---

[6] Bayview does not so much argue that an improper notice of a foreclosure sale is immaterial as it misunderstands what representation Plaintiff alleges as the basis of her FDCPA claims. Plaintiff alleges that Defendants violated the FDCPA "[b]y scheduling and advertising foreclosure sales [sic] of the Plaintiffs' [sic] property." (Am. Compl. ¶ 64.) Bayview, however, seems to think that Plaintiff's FDCPA claims emerge from Bayview's December 29 Response Letter. (*See* Bayview Mot. Dismiss Mem. Supp. at 18.) It would seem that a denial of a borrower's loan modification application would be a material representation as well, but regardless, the Court has no need to decide that issue.

provisions, 12 C.F.R. § 1024.35, and for violations of the FDCPA, 15 U.S.C. §§ 1692e-1692f. Plaintiff has alleged sufficient facts to state a claim against Rosenberg for violations of the FDCPA, 15 U.S.C. §§ 1692e-1692f. Therefore, Bayview's and Rosenberg's motions to dismiss will be denied by accompanying order.

DATED this 15th day of November, 2017

BY THE COURT:

_____/s/_____
James K. Bredar
Chief Judge