IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| SHERRY L. WEISHEIT, | * | |
| Plaintiff | * | |
| v. | * | CIVIL NO. JKB-17-0823 |
| ROSENBERG & ASSOCIATES, LLC, *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Plaintiff Sherry L. Weisheit brought this action against Defendants Rosenberg & Associates, LLC ("Rosenberg"), and Bayview Loan Servicing, LLC ("Bayview"), in March of last year, alleging violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.* and its implementing regulations, and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, all resulting from alleged actions taken by Defendants in connection with an attempted foreclosure of Plaintiff's home in 2017. After Plaintiff amended her complaint, Defendants brought motions to dismiss and the Court denied those motions on November 15, 2017. Defendants then answered Plaintiff's amended complaint and the parties proceeded to discovery. The Court entered a scheduling order setting January 22, 2018 as the deadline for amending pleadings, and April 23, 2018 as the discovery deadline. (*See* ECF No. 35.) On March 19, 2018, Plaintiff moved to amend her complaint. (Mot. Amend, ECF No. 43.) The proposed amendments go only to Plaintiff's claims against Bayview, and Rosenberg did not respond in opposition to the motion. Bayview responded on April 2, 2018 (ECF No. 50), and Plaintiff replied on April 20 (ECF No. 55). Plaintiff's motion to amend is therefore ripe for

review. There is no need for a hearing to resolve the matter, *see* Local Rule 105.6 (D. Md. 2016), and therefore Bayview's request for a hearing (ECF No. 51) will be denied by accompanying order. Plaintiff has satisfied both Federal Rules of Civil Procedure 16(b) and 15(a), and therefore her motion to amend will be granted by accompanying order.

## I.   *Background*

The facts relevant to the resolution of Plaintiff's motion to amend are not in dispute. Plaintiff brought this lawsuit against Bayview and Rosenberg on March 27, 2017. (*See* Compl., ECF No. 1.) Plaintiff asserted jurisdiction under 28 U.S.C. § 1331, on the ground that her complaint alleged violation of federal laws. (*See* Am. Compl. ¶ 7, ECF No. 19.) Plaintiff alleged that Bayview "is a loan servicer that regularly conducts business throughout the United States and Maryland." (*Id.* ¶ 11.)

Two allegations in Plaintiff's amended complaint are relevant to Plaintiff's motion to amend. First, Plaintiff allegedly received a letter from Bayview on December 29, 2016 that explained why Bayview denied Plaintiff's application for a loan modification, and stated that Bayview had "enclosed all supporting documentation," although no documentation was included. (Am. Compl. ¶¶ 22-23; December 29 Letter, Compl. Ex. 3, ECF No. 1-3.) Plaintiff then allegedly received a letter in February 2017 stating that the "all supporting documentation" language was "standard verbiage" and that no supporting documentation was forthcoming. (Am. Compl. ¶ 31.) Plaintiff attached this letter to her complaint. (February 15 Letter, Compl. Ex. 7, ECF No. 1-7.)

Second, Plaintiff alleged that in the same December 29, 2016 letter, Defendant cited an investor restriction as the reason for denying her application. (Am. Compl. ¶ 22.) But, Plaintiff alleged, "[d]espite RESPA requirements to the contrary, Bayview did [not] identify the name of

2

the investor or the particular guideline." (*Id.* ¶ 23.) Plaintiff allegedly informed Bayview that this information was missing, but Bayview never responded. (*See id.* ¶ 34.)

On August 25, 2017, both Defendants brought motions to dismiss under Rule 12(b)(6), and did not challenge the Court's subject-matter jurisdiction over the Plaintiff's claims, or the Court's personal jurisdiction over either Defendant. (*See* ECF Nos. 21-22.) The Court denied Defendants' motions to dismiss on November 15, 2017 (Order, ECF No. 30), and both Defendants answered on November 29. Bayview denied that it regularly conducted business in the United States and Maryland. (Bayview Ans. ¶ 11, ECF No. 31.) With regard to Plaintiff's allegation that Bayview had an obligation under RESPA to provide the name of the investor and did not do so, Bayview admitted that it sent a letter to Plaintiff on December 29, 2016 denying her application, but denied the rest of the allegation.

On December 21, 2017, the Court entered a scheduling order. In that order, the Court set January 22, 2018 as the deadline for moving for joinder of additional parties and amendment of pleadings. (Scheduling Order, ECF No. 35.) The parties proceeded to discovery. There is some dispute as to the conduct of the parties regarding discovery, but the Court has gleaned the following facts that appear to be undisputed: Defendant served Plaintiff with its first set of interrogatories on March 14, 2018 (Mot. Amend Mem. Supp. 3, ECF No. 43-1); Defendant provided responses to Plaintiff's first set of interrogatories and requests for admission on March 7, 2018 and amended responses on March 16 (*Id.*; Opp'n Mot. Compel 6-7, ECF No. 44); and neither party has taken a deposition (Mot. Amend Mem. Supp at 6). The discovery deadline was set for April 23, 2018, but the Court has indefinitely postponed that deadline. (*See* Mem. & Order, ECF No. 56.)

Plaintiff moved to amend her complaint for a second time on March 19, 2018, a little less than two months after the deadline for amending pleadings. Plaintiff's proposed amendments include some typographical fixes, as well as a few clarifications, but largely revolve around a single significant change: Plaintiff wishes to amend her complaint to include allegations on behalf of a putative nationwide class of borrowers who, according to Plaintiff, were harmed by Bayview's alleged violations of RESPA. Plaintiff asserts that she had "promptly reached out to lawyers experienced in class action lawsuits and requested that they review the case," and has secured outside, class action counsel. (Mot. Amend Mem. Supp. at 4-5.) Bayview responded in opposition to Plaintiff's motion to amend on April 2 and Plaintiff replied on April 20. That same day, the Court entered a memorandum and order, denying as moot an earlier motion by Plaintiff to compel answers to her first set of interrogatories, and indefinitely postponing the discovery deadline in this case, pending resolution of Plaintiff's motion to amend; a task to which the Court will now turn.

**II.**    *Standard for Motion to Amend Complaint*

When a plaintiff seeks to amend her complaint after the deadline for doing so set in a scheduling order, she "triggers both Fed. R. Civ. P. 15(a) governing amendments to pleadings and Fed. R. Civ. P. 16(b) governing modification to a scheduling order." *Rassoull v. Maximus, Inc.*, 209 F.R.D. 372, 373 (D. Md. 2002). First, the Plaintiff "must satisfy the good cause standard of Rule 16(b); if the moving party satisfies Rule 16(b), the movant then must pass the tests for amendment under [Rule] 15(a)." *Elat v. Ngoubene*, 993 F. Supp. 2d 497, 519 (D. Md. 2014) (internal quotation marks omitted); *see Nourison Rug Corp. v. Parvizian*, 535 F.3d 295, 298-99 (4th Cir. 2008) (noting tension between Rule 15 and Rule 16; not reaching district court's Rule 15(a) finding of futility because it affirmed district court's Rule 16(b) application of "good

cause" standard). Under Rule 15(a) the Court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). In this Circuit, "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would [be] futile." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)).

### III. *Analysis*

#### a. *"Good cause" under Federal Rule of Civil Procedure 16(b)*

The "primary consideration of the Rule 16(b) 'good cause' standard is the diligence of the movant." *Rassoull*, 209 F.R.D. at 374. "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)).

The Court is satisfied that Plaintiff was diligent here, and has not sat on her hands and moved to amend at a late hour. Plaintiff missed the deadline for amendment by fifty-six days; not even two months. Plaintiff asserts that she spent the early months of this year seeking out, vetting, and collaborating with class counsel, activities that take "considerable time." *Nester v. Hampton Inn Princeton*, Civ. No. 1:13-03336, 2013 WL 5425123, at *2 (S.D. W. Va. Sept. 26, 2013). Defendant does not rebut that timeline nor does it contest Plaintiff's assertions regarding her efforts to secure class counsel and prepare this motion and amended complaint. (*See* Opp'n Mot. Amend 7, ECF No. 50 (noting that "[w]hile Plaintiff outlines her effort to diligently bring class claims after the Court's ruling on the motions to dismiss, such is not sufficient to meet the

good cause standard").) Rather, Defendant's argument is largely premised on the proposition that "good cause" requires a showing that the movant has only recently learned of new facts that necessitate amending her pleadings. Defendant relies on *Nourison* for this proposition, but its reliance is misplaced.

In *Nourison*, a defendant moved to amend his answer to include an affirmative defense after responding in opposition to a motion for summary judgment, and about six weeks after the scheduling order's deadline for amending pleadings. 535 F.3d at 297. The district court denied the motion under Rule 16(b), finding that the defendant "provide[d] no reason for his failure either to include the defense of release in his original answer or to make a timely motion for leave to amend the answer to include this defense." *Id.* The defendant had explained that "[i]n responding to the motion for summary judgment, [defendant]'s counsel reviewed his defenses to the guaranty letter at issue in this case and noted that there was a defense available to [defendant] that he had not raised in his Answer: release." *Id.* at 298. Or, as a non-lawyer might put it, counsel realized he had made a mistake. The Fourth Circuit stated that "[t]his is far short of what is required to satisfy the good cause standard." *Id.*

*Nourison*, then, does not stand for the proposition that a movant must demonstrate some new facts that were reasonably unknown to her prior to the amendment deadline in order to demonstrate "good cause" under Rule 16(b). Rather, it is a restatement of the text of Rule 16(b)—that a movant must show some good reason for not meeting the amendment deadline—and a simple application of that rule: forgetting to add a defense to one's answer, and only realizing that mistake after preparing an opposition to a motion, is not a "good" reason to miss the amendment deadline.

To be sure, Plaintiff had some sense before January 22, 2018 of the constellation of facts that undergird the class claims she now wishes to add. Plaintiff asserts that she gleaned information from Bayview's answers to her requests for admission that "bolstered" her belief that she had class claims. (Mot. Amend Mem. Supp. at 4.) Namely, Bayview asserted that the language in the December 29, 2016 letter regarding enclosed documents was "standard form content," and Bayview did not admit that it had an obligation to name the investor behind the purported investor restriction. (*Id.*) But Plaintiff likely knew these basic facts before discovery. She should have known that Defendant may have used the language in the December 29, 2016 denial letter as standard language in other denial letters sent to other borrowers: Defendant said as much in a letter, dated February 2017, that was attached to Plaintiff's complaint. And she should have known on November 29, 2017 that Bayview did not believe it had an obligation to name the investor, as that was the date when Bayview denied such in its answer to her amended complaint. Still, the fact that Plaintiff was likely aware, prior to the amendment deadline, of information that (according to her) "bolstered" potential class claims does not mean there are no good reasons for some delay in moving to amend.

A class action, particularly a nationwide class action as proposed by Plaintiff here, changes the character of a lawsuit significantly. Plaintiff may have known of the possibility of a class action, but still taken time to consider her options and weigh the implications of such an amendment to her case. Importantly, she could have taken such time but still acted diligently. Furthermore, even if Plaintiff had known of the facts that (according to Plaintiff) support class certification, she may not have appreciated their impact, and only realized the viability of her claim as a class action after consultation with experienced class counsel. In *Nester v. Hampton Inn Princeton*, a plaintiff moved to amend her complaint to include new legal claims, based on

facts previously available to her, after the amendment deadline. 2013 WL 5425123, at *1-*2. Much like the case before the Court, the plaintiff "[had] a consultant review and analyze . . . documents, ensure[d] that [she] ha[d] sufficient evidence and a sufficient base to assert the [additional] claim, s[ought] to amicably amend her complaint, prepare[d] a motion to amend her complaint, [and] prepare[d] an amended complaint." *Id.* at *2. The court recognized that these "tasks take considerable time, effort, and diligence," and although the plaintiff "could have filed [the] motion earlier [than she did], the fact that she waited . . . could indicate an abundance of caution rather than the sort of foot-dragging alleged by defendants." *Id.* The same is true here. Certain facts may have been available to Plaintiff before the deadline, and she may have been able to act with greater haste to amend her complaint. Perhaps it was even possible to do so before the amendment deadline. But none of that means that Plaintiff was not diligent in her efforts to seek out class counsel, analyze potential class claims, make a decision to add such claims, seek to amicably amend her complaint, prepare an amended complaint, and finally prepare and submit a motion to amend. The Court finds that Plaintiff acted diligently, and that she has good cause for missing the amendment deadline.

### b. *Federal Rule of Civil Procedure 15*

Plaintiff's satisfaction of Rule 16 does not end the matter; she must also satisfy Rule 15. Under Rule 15 "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would [be] futile." *Laber*, 438 F.3d at 426 (quoting *Johnson*, 785 F.2d at 509). Bayview does not (at least explicitly) argue that it will be prejudiced by this amendment, and the Court finds that it would not be so prejudiced. The case is still in relative infancy, and it does not appear that either side has expended significant resources in litigation. Contrary to Defendant's

8

statement that "discovery is nearly complete" (Opp'n Mot. Amend at 3)—a statement based (it would seem) on the now-outdated discovery deadline of April 23—it appears to the Court that the parties have not engaged in much discovery; only exchanging a first set of interrogatories, requests for admission, and some documents. In general, as discussed above, there has not been much delay in this case. Plaintiff has moved to amend only fifty-six days after the deadline, and has shown good cause for that tardiness. Furthermore, Bayview has not accused Plaintiff of acting in bad faith, and the Court sees no indication of bad behavior in regard to Plaintiff's technically late attempt to amend her complaint.

The issue that Bayview stands on and expends the majority of its opposition discussing is futility, and its futility argument stands entirely on the holding of *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.*, 137 S. Ct. 1773 (2017). In that case, a group of plaintiffs from thirty-four states brought a mass tort action against Bristol-Myers Squibb ("BMS") in state court in California. 137 S. Ct. at 1778. Eighty-six of the plaintiffs were California residents, who alleged to have been harmed by one of BMS' drugs, Plavix, in California. *Id.* The other 592 plaintiffs were from other states, and "were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California." *Id.* at 1781. Nor did BMS "create a marketing strategy for Plavix in California, . . . [or] manufacture, label, package, or work on regulatory approval of the product in California." *Id.* at 1778. In short, the only connection between the out-of-state plaintiffs and the forum state was that BMS had allegedly harmed other people in the state in ways similar to how the out-of-state plaintiffs had allegedly been harmed.

The Supreme Court of California nevertheless held that California courts had personal jurisdiction over BMS even with regard to the claims brought by the out-of-state plaintiffs. *Id.* at

9

1778-79.  The Supreme Court of the United States reversed.  It explained that "[t]he mere fact that *other* [in-state] plaintiffs were prescribed, obtained, and ingested Plavix in California—and allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert specific jurisdiction over the nonresidents' claims." *Id.* at 1781.

Bayview contends that Plaintiff's proposed amendments would create a case that is *Bristol-Myers* on all fours.  Therefore, according to Bayview, the Court will not have specific personal jurisdiction over claims brought by the nationwide class, and Plaintiff's proposed amendments are thus futile.  But Defendant appears to misunderstand the force of *Bristol-Myers*, and more evidently misunderstands the posture of this case.

First, *Bristol-Myers* does not clearly foreclose the possibility of a nationwide class in this case.  *Bristol-Myers* concerned the exercise of personal jurisdiction by state courts over state law claims in a mass tort action.  If the Court were to certify a class in this case it would involve the exercise of personal jurisdiction by a federal court over federal law claims in a class action.  It is unclear what impact *Bristol-Myers* has in such a case.  *See Bristol-Myers*, 137 S. Ct. at 1783-84 ("[S]ince our decision concerns the due process limits on the exercise of specific jurisdiction by a State, we leave open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court.").  Defendant cites two cases from the Northern District of Illinois that have extended *Bristol-Myers* to cases analogous to the one before the Court.  *See Practice Mgmt. Support Servs., Inc. v. Cirque du Soleil, Inc.*, No. 14 C 2032, 2018 WL 1255021 (N.D. Ill., Mar. 12, 2018); *DeBernardis v. NBTY, Inc.*, Case No. 17 C 6125, 2018 WL 461228 (N.D. Ill. Jan. 18, 2018).  But Plaintiff cites many other cases that have declined to extend *Bristol-Myers* beyond its facts.  *See, e.g.*, *In re Morning Song Bird Food Litig.*, Lead Case No.: 12CV01592 JAH-AGS, 2018 WL 1382746 (S. D. Cal. Mar. 19, 2018)

(finding *Bristol-Myers* inapplicable to nationwide class actions); *Casso's Wellness Store & Gym, L.L.C. v. Spectrum Lab. Prods., Inc.*, Civ. No. 17-2161, 2018 WL 1377608 (E. D. La. Mar. 19, 2018) (same); *Swamy v. Title Source Inc.*, No. C 17-01175 WHA, 2017 WL 5196780 (N.D. Cal. Nov. 10, 2017) (finding *Bristol-Myers* inapplicable to FLSA collective action because FLSA is a federal claim). The takeaway is that it is not apparent that *Bristol-Myers* renders Plaintiff's proposed amendments futile.

More importantly, the Court need not decide at this juncture what precisely the contours of a possible class will be, or if the Court will certify a class at all. Simply put, Bayview has raised its *Bristol-Myers* argument too early. Even under Bayview's reading of *Bristol-Myers* this Court would still have personal jurisdiction over claims brought against Bayview if Bayview is subject to general jurisdiction in Maryland. Bayview states in its opposition that it is a Delaware corporation headquartered in Florida, but the Court has seen no evidence as to Bayview's citizenship or the quantum of contacts it has with the state Maryland.[1] Furthermore, *Bristol-Myers* would not, it seems, preclude adjudication by this Court of claims brought by a state-wide class.

Plaintiff has a long road ahead in this proposed class action, and many hurdles stand in the way of bringing a class action against Bayview in this Court, including, potentially, the Court's exercise of personal jurisdiction. But that does not mean that Plaintiff's proposed amendments are "futile." Accordingly, the Court finds that Plaintiff has met her burden under Rule 15.

---

[1] This Court has jurisdiction over the case under 28 U.S.C. § 1331, and has not had to address the citizenship of the parties. Aside from Bayview's say-so in its opposition, it appears to the Court that the state-of-play regarding Bayview's citizenship is that Plaintiff has alleged that Bayview regularly conducts business in Maryland (Am. Compl. ¶ 11), and Bayview has denied that allegation (Bayview Ans. ¶ 11).

11

## IV. *Conclusion*

Plaintiff has demonstrated sufficient good cause under Rule 16(b) to amend her pleading after the deadline for doing so set forth in the Court's scheduling order issued December 21 of last year. The Court finds that Bayview will not be prejudiced as a result of the proposed amendment, Plaintiff has not acted in bad faith, and her amendment is not futile. For these reasons the Court will grant Plaintiff's motion to amend her complaint by accompanying order. The Clerk will be ordered to docket Plaintiff's proposed second amended complaint (ECF No. 43-2) as the Plaintiff's Second Amended Complaint. Defendant shall respond to the Second Amended Complaint within the time allotted under Federal Rule of Civil Procedure 12(a)(4). The discovery deadline in the Court's December 21, 2017 Scheduling Order remains indefinitely postponed, and the parties are encouraged to continue efforts to engage in discovery and settle any disputes informally.

DATED this 25th day of April, 2018.

BY THE COURT:

_____/s/_____
James K. Bredar
Chief Judge